Brandenburg v. Sandidge's Committee.

CASE 58.—ACTION BY JAMES MATT SANDIDGE'S COMMIT-
TEE FOR THE SALE OF LAND TO PAY DEBTS.—
November 23, 1909.

# Brandenburg v. Sandidge's Comittee.

Appeal from Hardin Circuit Court.

W. S. CHELF, Circuit Judge.

From a judgment requiring the purchaser,
Brandenburg, to pay for the land he appeals.—Re-
versed.

Insane Persons—Sale of Real Estate—Validity.—Where the ap-
pointment of a committee for a lunatic was void, and an
order for the sale of the lunatic's real estate to pay debts
made in a suit by the committee against the lunatic confined
in an asylum and his creditors was void, the court could not
compel the purchaser to accept a deed from the lunatic while
in the asylum on the mere ex parte affidavit of the asylum
physician, averring that the lunatic had been restored to
reason.

H. L. JAMES for appellant.

LAYMAN & HOLBERT and L. A. FAUREST for appellees.

No briefs—record misplaced.

OPINION OF THE COURT BY CHIEF JUSTICE NUNN—
Reversing.

Prior to May 25, 1908, one James Matt Sandidge
owned about 185 acres of land in one body in Hardin
county, Ky. He was indebted to the Leitchfield
Deposit Bank in the sum of about $2,300, which was
secured by a mortgage on the land and to C. Z. Aud
something over $100, which was also secured by a

mortgage on the land.   He owed two or three mer-
chants' accounts which were unsecured.   All of his
indebtedness amounted to something like $2,700.   On
the date above named Sandidge was given a form of
trial as to his sanity in the county court.   The jury
found him of unsound mind and to be a lunatic. , The
court so adjudged him, and directed·his immediate
conveyance to the asylum in Lakeland,·Ky., which
was done.   W. H. Gardner was appointed his com-
mittee, and he instituted . this . action, alleging that
Sandidge was a lunatic and then confined in the asy-
lum in Lakeland, and made him a defendant with the
creditors of Sandidge, and asked that the land be
sold to satisfy the creditors.

·The case was referred to a master commissioner
to take proof of and report claims against Sandidge's
estate.   He reported the·amount thereof, which was,
in substance, as stated.·  The court directed a sale of
all the land for the reason that it could not be divided
without materially impairing its value, and directed
that the creditors of Sandidge be paid out of the pur-
chase price.   The land was sold by the commissioner,
and appellant, Brandenburg, bid the sum of $4,450,
about $1,200 or $1,400 more than the proof shows
that it was worth.   The sale was reported by the
commissioner to the court, and at the first term after
the sale, a guardian ad litem for Sandidge's infant
children filed exceptions to the sale of the whole
of the land, stating that Sandidge and his children
were entitled to a homestead, which should be set
apart and the balance sold to pay the debts.   Bran-
denburg appeared at the same time, and filed excep-
tions to the report of sale, making the point that the
whole proceeding by which the land was sold was
void; that the confinement of Sandidge in the asylum

was without legal authority because he had not been lawfully adjudged to be a lunatic.

Both parties agree that these contentions are true, and the court so stated in its judgment, but compelled Brandenburg to take the land at his bid for the following reasons: After it was discovered that all the proceedings leading up to the sale of the land by an order of the court were void, a deed was prepared from James Matt Sandidge to appellant, Brandenburg, the purchase price being fixed at appellant's bid, which contained a clause of general warranty, and was sent or carried to Jefferson county, where the asylum is situated, and was signed and acknowledged by J. Matt Sandidge before Victor Swope, a notary public for that county, who certified that Sandidge freely ratified and confirmed the sale to Brandenburg. On the same day one W. E. Gardner made an affidavit stating, in effect, that he was the first assistant physician at the Central Kentucky Asylum for the Insane in Lakeland, Ky.; that as such physician J. Matt Sandidge was placed under his care when sent to the asylum; that he had been restored to his right mind, was then, and had been for several months, of sound mind, and thoroughly capable of attending to his own business, although somewhat physically disabled; that he had mind and capacity to understand a contract to sell and convey his real estate and other property. This affidavit was filed in court, and the court directed its commissioner who made the sale of the land to join Sandidge in the deed to appellant, and from this order the appeal was prosecuted.

The only question to be considered is whether the court erred in compelling appellant to accept the deed so made and tendered and pay the purchase price.

Appellees' counsel concedes in his argument that the lower court had no jurisdiction to make the sale of the land, but as Sandidge, when in his right mind, as shown by the affidavit of the assistant physician, ratified and confirmed the attempted sale of the land by the court and executed a deed of general warranty, appellant should be required to take the land and pay the purchase price. In support of this contention, counsel refer to some authorities to the effect that, when an agent makes a sale of land without disclosing his agency, the purchaser was compelled to take the land when the principal made a good title.

The case at bar is not like those cases. We have found no case where the purchaser of land who believed that he was getting a good title from the person who sold it to him was compelled to take the land when he discovered that the seller did not own it and his principal was an infant, idiot, or lunatic, or there were reasonable grounds to believe that the principal was laboring under any one of these difficulties. Brandenburg knew the owner of the land was in the asylum, and believed that the court had jurisdiction to make a sale and pass a good and perfect title to the land, and he should not have been made to accept the deed from Sandidge made while he was in the asylum; the only evidence of his having been restored to his right mind being an ex parte affidavit of the assistant physician of the asylum.

While it is agreed that all the proceedings which led up to the placing of Sandidge in the asylum were void, yet the record shows that a jury was impaneled, the proper oath administered, and a verdict returned to the effect that Sandidge was of unsound mind and a lunatic, and that he was immediately sent to the asylum, where he remained until after the court

ordered appellant to accept the deed. Appellant traded with the court and expected a good title from it, and the court had no power to compel him to accept a deed from another vendor, especially when that vendor's sanity was in doubt, and appellant might be put to the expense and trouble in maintaining his title against the claim of Sandidge's heirs. If the creditors of Sandidge had made their answers to the petition a cross-petition against Sandidge and had him served with process before the sale of the land, it would have been valid, but they did not do that. Sandidge was before the court only upon the petition of Gardner, his alleged committee, whose appointment was void, wherefore Gardner had no right to institute the action.

For these reasons, the judgment of the lower court is reversed and remanded, with directions to set aside the sale and to dismiss the petition.